# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DIANA NICKERSON, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>AMERICAN ELECTRIC POWER COMPANY, INC., NICHOLAS K. AKINS, and BRIAN X. TIERNEY, )<br><br>Defendants. ) | Case No. 2:20-cv-04243-SDM-EPD<br><br>Judge Sarah D. Morrison<br>Magistrate Judge Elizabeth Preston Deavers<br><br>**ORAL ARGUMENT REQUESTED** |

## **DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Federal Rules of Civil Procedure 12(b) and 9(b), AEP[1] and the Individual Defendants respectfully move the Court for an Order dismissing Plaintiffs' Amended Complaint dated March 9, 2021 (the "Complaint") in its entirety and with prejudice.[2] The bases for this Motion are fully set forth in the accompanying Memorandum in Support.

---

[1] As used herein, "AEP" refers to American Electric Power Company Inc. "Individual Defendants" refers to Nicholas K. Akins and Brian X. Tierney (collectively with AEP, "Defendants"). References to the "Complaint"—cited herein as ("Compl. ¶__")—means the Amended Complaint filed on March 9, 2021. "Plaintiffs" refers to Lead Plaintiffs Seafarers Health and Benefits Plan, Seafarers Vacation Plan, and James J. Durrett, Jr., individually and on behalf of all others purportedly similarly situated. Defendants treat Plaintiffs' factual allegations as true for purposes of this motion only, as required on a motion to dismiss.

[2] Although the original complaint named Joseph M. Buonaiuto as a defendant in this action, the Amended Complaint does not name Mr. Buonaiuto as a defendant and makes no allegations about him. Mr. Buonaiuto should, therefore, be formally dismissed from the case. *See Howard v. Montgomery Cnty. Jail*, No. 3:16-CV-517, 2018 WL 3020216, at *3 (S.D. Ohio June 18, 2018), *report and recommendation adopted*, 2018 WL 3832946 (S.D. Ohio Aug. 13, 2018) (granting motion to dismiss and explaining that "Plaintiff voluntarily dismissed . . . parties by not including them as named Defendants in his first amended complaint"); *Courser v. Allard*, No. 1:16-cv-1108, 2018 WL 2447970, at *4 (W.D. Mich. May 31, 2018) (holding that an amended complaint that drops a party obviates need for Rule 41 dismissal).

Defendants request oral argument pursuant to Local Rule 7.1(b)(2). This case presents numerous complex legal and factual issues. Accordingly, the Defendants respectfully submit that oral argument would assist the Court in its decision-making process.

**TABLE OF CONTENTS, SUMMARY OF PRINCIPAL
ARGUMENTS, AND CITATIONS TO PRIMARY AUTHORITIES**

**INTRODUCTION**......................................................................................................1

**BACKGROUND** .....................................................................................................3

**LEGAL STANDARD** ............................................................................................5

**ARGUMENT** ..........................................................................................................8

**I.     The Court Should Dismiss Count I Because Plaintiffs Have Not Sufficiently
        Pled Scienter.** ...............................................................................................8

> **A.     Plaintiffs Do Not Allege Facts Sufficient To Infer That Defendants, Or
>        Anyone Else At AEP, Knew About Or Participated In Householder's
>        Criminal Bribery Scheme.** .................................................................8

The Complaint does not satisfy the PLSRA's heightened pleading standards because it fails to "*state with particularity* facts giving rise to *a strong inference* that the defendant acted with the required state of mind.*" In re Omnicare, Inc. Sec. Litig.* ("*Omnicare III*"), 769 F.3d 455, 472–73 (6th Cir. 2014) (citing 15 U.S.C. § 78u-4(b)(2)) (emphasis added). Plaintiffs are required to plead particular facts establishing that Defendants acted with a "knowing and deliberate intent to manipulate, deceive, or defraud.*" Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th Cir. 2008); 15 U.S.C. § 78u-4(b)(2). Plaintiffs must plead an inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged.*" In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 856 (S.D. Ohio 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). Plaintiffs must also plead scienter as to each of the Defendants. *See Loc. 295/Loc. 851 IBT Employer Grp. Pension Tr. and Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 719–20 (S.D. Ohio 2010).

Here, Plaintiffs' claims fail because they do not allege a single particularized fact to support the conclusion that any of the Defendants knew about, or participated in, former Speaker of the Ohio House of Representatives Larry Householder's bribery scheme. This defeats scienter because the only fraud Plaintiffs attempt to plead is based on Householder's scheme. Plaintiffs rely solely on conclusory allegations and attempt to heap inference upon inference to support their claims, but the Sixth Circuit specifically rejected this approach in *Omnicare III*, 769 F.3d at 482–83 (affirming dismissal where plaintiffs failed to plead "concrete details" sufficient to establish defendants had "actual knowledge" of the alleged wrongdoing). Allegations that AEP "long sought the benefits" of Ohio House Bill 6 ("HB6," the legislation at the center of the alleged bribery scheme), and that the Individual Defendants had access to relevant information, do not give rise to a strong inference of scienter. *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (allegations that defendants profited from effect of misleading statements may "illustrate . . . motive and opportunity," but are insufficient for

pleading scienter); *Loc. 295/Loc. 851 IBT*, 731 F. Supp. 2d at 726 (holding no scienter where plaintiffs' allegations relied heavily on defendants' supposed service on committees and access to pertinent information, in the absence of particular facts demonstrating defendants actually received the information). Plaintiffs' unsupported contention that political contributions made by individual AEP employees or the AEP PAC to Householder and other Ohio representatives does not create an inference of scienter because making contributions to a politician who turns out to be corrupt does not demonstrate knowledge or participation in that corruption. *See Omnicare III,* 769 F.3d at 482–83.

**B.** **The Individual Defendants' Stock Sales Do Not Create The Necessary Strong Inference Of Scienter.** ..............................................................................14

Plaintiffs' allegations of insider trading do not support a strong inference of scienter because Plaintiffs fail to plead facts establishing that the Individual Defendants knew of any alleged wrongdoing and fail to plead facts establishing that the relative size, timing, and other context of their stock sales support an inference of scienter. *In re Ferro Corp.*, Nos. 1:04-CV-1440 & 1:04-CV-1589, 2007 WL 1691358, at *14–15 (N.D. Ohio June 11, 2007) ("The mere sale of stock is not enough to lead the Court to infer scienter."); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092–93 (9th Cir. 2002) (holding stock sales did not support inference of scienter).

**C.** **The Only Reasonable Inference Is That There Was No Scienter.** ................177

Taken as a whole, Plaintiffs' allegations do not support any inference of scienter because Plaintiffs do not plead Defendants knew about the specific fraud underlying their claims (Householder's bribery scheme).

**II.** **The Court Should Dismiss Count I For The Independent Reason That Plaintiffs Fail To Plead Any Actionable, Material Misstatements Or Omissions.** ..................................................................................................................18

**A.** **Defendants Did Not Omit Or Misstate Material Information Concerning AEP's Support For HB6.** ...................................................18

Plaintiffs claim that Defendants misled investors about the nature and extent of AEP's support for HB6, primarily by not disclosing AEP's desire for certain Ohio Vallley Electric Corporation ("OVEC") cost recovery provisions, is flatly contradicted by AEP's numerous and robust public disclosures about its support for HB6 and the importance of OVEC cost recovery. *See Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 468 (6th Cir. 2011), (holding alleged omissions inactionable because they consisted of public information); *Walker v. L Brands, Inc*., No. 2:19-CV-3186, 2020 WL 6118467, at *11 (S.D. Ohio Oct. 16, 2020) (finding plaintiff's proposed inferences "unreasonable and thus, immaterial" given that it was "widely known that L Brands' performance had declined steadily for several years").

**B.**       **Defendants Non-Disclosure Of 501(c)(4) Contributions Does Not Give Rise To An Actionable Omission.** ...................................................................**23**

Plaintiffs' allegations that Defendants "fraudulently concealed" AEP's contributions to a 501(c)(4) organization are not actionable because AEP had no duty to disclose the contributions, and the contributions were not material.

      **1.**       **Defendants Had No Duty To Disclose AEP's 501(c)(4) Contributions.** ...........................................................................................**23**

AEP had no legal duty to disclose contributions to any 501(c)(4) organization, and Plaintiffs do not plead facts demonstrating that Defendants omitted infromation that was "necessary" to make the statements at issue not misleading. *Walker*, 2020 WL 6118467, at *8 (an alleged omission is only actionable when the defendant has a "duty to affirmatively disclose" the information, which duty may arise by statute or if the plaintiff sufficiently pleads facts demonstrating that the omitted information was "necessary in order to make [a defendant's prior] statements . . . not misleading"). Plaintiffs plead no statutory duty to disclose, and there is none. Plaintiffs' claim that AEP's contributions to EOE were subject to disclosure as political contributions is refuted by federal and state regulations. 11 CFR § 100.52(a), § 100.54; Ohio Rev. Code § 3517.01(C)(5). Plaintiffs do not plead facts demonstrating anyone at AEP knew EOE's contributions were being misused. *See Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 575 (6th Cir. 2008) (finding no duty to disclose prohibited payments to state official that jeopardized government contract, where there was no evidence suggesting that defendants were aware of risk). Courts have made clear that an allegation of illegal conduct, on its own, does not create a duty to disclose information related to the alleged misconduct. *See, e.g., Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.* ("*Omnicare I*"), 583 F.3d 935, 945–46 (6th Cir. 2009) (finding statements regarding defendants' legal compliance not actionable absent detailed allegations that defendants knew statements were false when made).

The fact that Defendants made statements about HB6 or AEP's political contributions or lobbying does not impose on them a duty to discuss every potentially relevant aspect of those topics. *See Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 246 (6th Cir. 2015); *Walker*, 2020 WL 6118467, at *11. There was also no duty to disclose the allegedly omitted information (*e.g*, Defendants' alleged "contributions to Householder's criminal enterprise"), because Defendants' actual statements (*e.g.*, general statements about provisions in HB6) lacked a "direct connection" to what Plaintiffs claim was supposedly omitted. *See e.g., In re ITT Educ. Services, Inc. Sec. and S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (dismissing complaint because plaintiffs did not establish any "direct connection between Defendants' statements regarding the sources of its revenue and enrollment growth and the omitted information regarding [the company's] predatory business practices").

2.      Defendants' Contributions To EOE Were Not Material. ....................28

Defendants' non-disclosure of AEP's contributions to EOE are not actionable for the separate reason that they were not material when evaluated in the context of AEP's total finanical picture. *See In re Nokia Corp. Sec. Litig.*, 423 F. Supp. 2d 364, 408 (S.D.N.Y. 2006). Given that AEP generated over $14.5 billion in revenue in both 2019 and 2020, and had a market cap of approximately $40 billion, AEP's contributions to EOE—$550,000 in the class period and $900,000 between 2017–2019—are immaterial as a matter of law. *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009); *In re Nokia Corp.*, 423 F. Supp. at 408; *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160–61 (S.D.N.Y. 2003).

C.      The Alleged Misstatements And Omissions Are Insufficiently Pled For Several Other Reasons. .........................................................................................29

The alleged misstatements and omissions are also inactionable because they consist of inactionable opinion statements, *Pension Fund Grp.*, 614 Fed. App'x at 247 (holding statements of opinion to be inactionable where plaintiffs failed to plead facts showing that defendants did not believe their opinions to be true when made), puffery, *In re MGT Cap. Invs., Inc. Sec. Litig.*, No. 16 Civ. 7415 (NRB), 2018 WL 1224945, at *13 (S.D.N.Y. Feb. 27, 2018) (courts have determined that statements touting a company's "transparency" are "textbook examples of inactionable puffery"), and forward-looking statements, *Omnicare I*, 583 F.3d at 943 (6th Cir. 2009) ("[PSLRA] safe-harbor excuses liability for defendants' projections, statements of plans and objectives, and estimates of future economic performance") (citation omitted). Plaintiffs also rely on unreasonable inferences that facially true statements created "false impressions." *Walker*, 2020 WL 6118467, at *11, 13, 14 (refusing to accept plaintiff's unreasonable inferences that defendant's statements created false impressions).

III.    The Court Should Dismiss Count I For The Independent Reason That Plaintiffs Have Failed To Adequately Plead Loss Causation. .......................................32

Plaintiffs fail to plead "a causal connection between the material misrepresentation and the [Plaintiff's] loss" because they fail to "explain" how the alleged misstatements and omissions "were revealed to be false and thereby caused a drop in the stock price." *Omnicare I*, 583 F.3d at 944. Plaintiffs allege that AEP's stock dropped because of a news article discussing Householder's criminal activity, but Plaintiffs allege no facts demonstrating AEP was involved in or knew of the criminal activity, and the news article did not correct any of the supposed false statements or omissions that Plaintiffs allege. Therefore the stock could not have dropped based on any supposed revelation brought to light by the article that related to the misstatements or omissions alleged in the Complaint. *Id*. To the extent Plaintiffs are inferring the article disclosed the *possibility* of AEP's involvement in the alleged bribery, courts have made clear that alleging the disclosure of a risk or potential for fraud, such as the announcement of an investigation into alleged

misconduct, does not plead loss causation. *See, e.g., Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008), (holding plaintiffs failed to plead loss causation based on news story which only reported the risk or potential that the operator committed alleged fraudulent activity, but not that operator necessarily did so).

**IV.    Count I Against The Individual Defendants Should Be Dismissed For Failure To State A Claim For All Of The Reasons Discussed Herein. ...................................35**

Plaintiffs' failure to adequately plead scienter, any actionable misstatement or omission, or loss causation requires dismissal of Count I as alleged against each of Defendants Akins and Tierny, just as it requires dismissal of AEP.

**V.    The Court Should Dismiss Plaintiffs' Count II Because Plaintiffs Have Failed To Plead A Primary Securities Law Violation (Count I) As Required To Sustain Their Claim Of Control Person Liability (Count II). ...................................36**

The control person claim (Count II) must be dismissed because Plaintiffs fail to "state a claim for a primary securities law violation under Rule 10b–5." *Dailey v. Medlock*, 551 F. App'x 841, 849 (6th Cir. 2014).

**VI.    The Court Should Dismiss The Complaint With Prejudice. ...................................37**

The Court should dismiss the Complaint with prejudice because Plaintiffs had over six months from the filing of the original complaint to investigate and attempt to substantiate their claims, but still have failed to plead cognizable claims. *Walker*, 2020 WL 6118467, at *18 (dismissing with prejudice because "the mandatory language in the PSLRA requires courts to restrict the ability of plaintiffs to amend their complaint," and plaintiffs already had one opportunity to amend) (citing *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003)) (quotation marks omitted).

**CONCLUSION ...................................................................................37**

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*In re 21st Century Holding Co. Sec. Litig.*,
  No. 07-61057-CIV, 2008 WL 5749572 (S.D. Fla. Nov. 7, 2008) ...........................................31

*Albert Fadem Tr. v. Am. Elec. Power Co.*,
  334 F. Supp. 2d 985 (S.D. Ohio 2004) .....................................................................................3

*In re Almost Fam., Inc. Sec. Litig.*,
  No. 3:10-CV-00520-H, 2012 WL 443461 (W.D. Ky. Feb. 10, 2012)....................................33

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................5

*Ashland, Inc. v. Oppenheimer & Co., Inc.*,
  648 F.3d 461 (6th Cir. 2011) .....................................................................................7, 14, 23

*Beaver Cnty. Ret. Bd. v. LCA-Vision Inc.*,
  No. 1:07-CV_750, 2009 WL 806714 (S.D. Ohio Mar. 25, 2009) ........................................337

*Bondali*, v. *YumA Brands, Inc.*,
  620 Fed. App'x 483 (6th Cir. 2015) .......................................................................................12

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410, 1424 (3d Cir. 1997)..................................................................................15, 16

*City of Pontiac Policemen's & Firemen's Ret. Sys.*,
  752 F.3d 173 (2d Cir. 2020)....................................................................................................25

*Com. Money Ctr., Inc. v. Ill. Union Ins.*,
  508 F.3d 327 (6th Cir. 2007) ...................................................................................................3

*In re Comshare Inc. Sec. Litig.*,
  183 F.3d 542 (6th Cir. 1999) .......................................................................................6, 12, 14

*D.E. & J Ltd. P'ship v. Conaway*,
  133 Fed. App'x 994 (6th Cir. 2005) ..................................................................................33, 34

*Dailey v. Medlock*,
  551 F. App'x 841 (6th Cir. 2014) ...........................................................................................36

*Darby v. Cent. Bus. Servs., Inc.*,
  96 Fed. App'x 277 (6th Cir. 2004) ..........................................................................................12

*In re Duke Energy Corp. Sec. Litig.*,
  282 F. Supp. 2d 158 (S.D.N.Y. 2003)......................................................................................28

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)............................................................................28

*Elam v. Neidorff*,
    544 F.3d 921 (8th Cir. 2008) .........................................................................17

*Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*,
    905 F.3d 892 (5th Cir. 2018) .........................................................................30

*In re EveryWare Glob., Inc. Sec. Litig.*,
    175 F. Supp. 3d 837 (S.D. Ohio 2016) ......................................................6, 24

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008)............................................................26

*In re Ferro Corp.*,
    Nos. 1:04-CV-1440 & 1:04-CV-1589, 2007 WL 1691358 (N.D. Ohio June 11,
    2007) ..............................................................................................14, 15, 16

*Fidel v. Farley*,
    392 F.3d 220 (6th Cir. 2004.........................................................................37

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019).........................................................................26

*In re Harley-Davidson, Inc. Sec. Litig.*,
    660 F. Supp. 2d 969 (E.D. Wis. 2009)..........................................................17

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) .........................................................................6

*I.B.E.W. v. Ltd. Brands, Inc.*,
    788 F. Supp. 2d 609 (S.D. Ohio 2011) .....................................................26, 31

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012)........................................................27, 32

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)....................................................................................36

*Ley v. Visteon Corp.*,
    543 F.3d 801 (6th Cir. 2008) .......................................................................5, 9

*Loc. 295/Loc. 851 IBT Employer Grp. Pension Tr. and Welfare Fund v. Fifth
    Third Bancorp*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) .................................................6, 8, 10, 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................27, 32, 33

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ......................................................................33, 34

*In re MGT Cap. Invs., Inc. Sec. Litig.*,
    No. 16 CIV. 7415 (NRB), 2018 WL 1224945 (S.D.N.Y. Feb. 27, 2018) .............................30

*Miller v. Champion Enters. Inc.*,
    346 F.3d 660 (6th Cir. 2003) ..................................................................................37

*In re Nokia Corp. Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)......................................................................28

*Indiana State Dist. Council of Laborers & Hod Carriers Pension Welfare Fund v.*
*Omnicare, Inc.*,
    583 F.3d 935 (6th Cir. 2009) ..................................................................25, 31, 32, 34

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) .......................................................................... *passim*

*In re Party City Sec. Litig.*,
    147 F. Supp. 2d 282 (D.N.J. 2001) ..........................................................................17

*Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*,
    614 F. App'x 237 (6th Cir. 2015) .............................................................26, 29, 30

*Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*,
    895 F.3d (7th Cir. 2018) ........................................................................................17

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) ..................................................................................36

*Ricker v. Zoo Ent., Inc.*,
    534 F. App'x 495 (6th Cir. 2013) ..............................................................................5

*Roeder v. Alpha Indus., Inc.*,
    814 F.2d 22 (1st Cir. 1987)....................................................................................26

*Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*,
    No. 17-CV-1713, 2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ............................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................5, 6, 36, 37

*TERA II, LLC v. Rice Drilling D, LLC*,
    No. 2:19-CV-2221, 2019 WL 6051115 (S.D. Ohio Nov. 15, 2019) ........................................5

*In re TransDigm Grp., Inc. Sec. Litig.*,
   440 F. Supp. 3d 740 (N.D. Ohio 2020).....................................................................27, 28, 33

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ...........................................................................14, 15, 16, 17

*In re Veon Ltd. Sec. Litig.*,
   No. 15-cv-08672 (ALC), 2021 WL 930478 (S.D.N.Y.)........................................................26

*Walker v. L Brands, Inc.*,
   No. 2:19-CV-3186, 2020 WL 6118467 (S.D. Ohio Oct. 16, 2020) ............................... *passim*

*Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.*,
   54 F. Supp. 3d 888 (S.D. Ohio 2014) .......................................................................................3

*Woolgar v. Kingstone Cos., Inc.*,
   477 F. Supp. 3d 193 (S.D.N.Y. 2020)....................................................................................17

*In re Yum! Brands, Inc. Sec. Litig.*,
   73 F. Supp. 3d 846 (2014) .....................................................................................................29

*Zaluski v. United Am. Healthcare Corp.*,
   527 F.3d 564 (6th Cir. 2008) .................................................................................................25

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) .................................................................................................17

**Statutes**

15 U.S.C. § 78t(a) ..........................................................................................................................36

15 U.S.C. § 78u-4(b)(2) ...................................................................................................................6

Ohio Rev. Code § 3517.01(C)(5)...................................................................................................24

Securities Exchange Act of 1934 § 10(b) ........................................................................4, 5, 8, 23

Securities Exchange Act of 1934 § 20(a) ................................................................................5, 36

**Other Authorities**

11 CFR § 100.52(a)........................................................................................................................24

11 CFR § 100.54.............................................................................................................................24

IRC § 501(c)(4)...............................................................................................................................13

IRS, *IRS Issues Guidelines for Tax-Exempt Groups Engaged in Public Advocacy*
(Dec. 23, 2003), https://www.irs.gov/newsroom/irs-issues-guidelines-for-tax-exempt-groups-engaged-in-public-advocacy (last reviewed/updated Mar. 3,
2020) ...................................................................................................................................11

IRS, *Public Disclosure and Availability of Exempt Organizations Returns and
Applications: Documents Subject to Public Disclosure* available at
https://www.irs.gov/charities-non-profits/public-disclosure-and-availability-of-exempt-organizations-returns-and-applications-documents-subject-to-public-disclosure (last reviewed/updated Jan. 7, 2021).........................................................13

IRS, *Social Welfare Organizations* (Apr. 2, 2021), https://www.irs.gov/charities-non-profits/other-non-profits/social-welfare-organizations....................................................11

## MEMORANDUM IN SUPPORT

## INTRODUCTION

This case is a meritless attempt to implicate AEP and the Individual Defendants in the criminal scheme alleged against former Speaker of the Ohio House of Representatives Larry Householder and certain of his associates. Plaintiffs' expansive allegations about the indictments, guilty pleas, and wrongdoing of Householder, his associates, Generation Now, and FirstEnergy Corp. ("FirstEnergy") speak volumes about Plaintiffs' effort to rely on the alleged wrongdoing of parties other than AEP.

Plaintiffs' theory is that Defendants (AEP and Messrs. Akins and Tierney) committed securities fraud by misstating or failing to disclose AEP's "direct involvement in funding Householder's criminal enterprise" to "pass and then defend" Ohio House Bill 6 ("HB6"), the legislation at the center of Householder's scheme that provided a billion-dollar bailout for two nuclear facilities owned by the energy company that engaged in the scheme, which was not AEP. The fundamental defect in Plaintiffs' Complaint is that Plaintiffs do not plead *facts* to support any plausible—let alone cogent and compelling—inference that Defendants were aware of or involved in the bribery scheme. Rather, Plaintiffs ask this Court to presume Defendants' knowledge and involvement because certain provisions of HB6 benefited AEP and because AEP contributed money to a 501(c)(4) organization (Empowering Ohio's Economy ("EOE")), which in turn contributed to other 501(c)(4) organizations, including Generation Now, the organization Householder and his associates allegedly used to further their criminal scheme. But that is not a legally sufficient basis to support a complaint.

As a result, Plaintiffs' claims do not meet the basic pleading standards of the Private Securities Litigation Reform Act ("PSLRA"). *First*, Plaintiffs fail to plead scienter because they fail to plead *facts* sufficient to allege that the Individual Defendants, or anyone else at AEP, knew

1

about or participated in the bribery scheme. Without such allegations, Plaintiffs' claims fall apart. Indeed, Plaintiffs' allegations that Defendants "fraudulently concealed" that AEP was actively supporting HB6, including by legally contributing money to EOE, can only satisfy the requisite intent to defraud investors if Defendants knew about Householder's bribery scheme.

*Second*, Plaintiffs fail to allege any actionable misstatement or omission. Plaintiffs identify statements made in AEP's SEC filings, conference calls, newsletters, and "Corporate Accountability Reports" (or "CARs") to claim that Defendants concealed the truth of AEP's support for HB6 and contributions to 501(c)(4) organizations. But the statements Plaintiffs identify can only be material if Defendants knew about Householder's bribery scheme, which Plaintiffs do not sufficiently allege. In addition, on their face, none of Plaintiffs' claimed omissions required disclosure in order to make the identified statements not misleading. The alleged omissions and misstatements are even more baseless when viewed in the context of AEP's extensive public disclosures concerning HB6, including the importance to AEP's business of its ability to continue to recover certain costs related to the Ohio Valley Electric Corporation ("OVEC") plants.

In addition to those defects, Defendants had no legal duty to disclose information regarding AEP's 501(c)(4) contributions, nor do Plaintiffs plausibly allege otherwise. And other alleged misstatements are inactionable because they are either too vague, amount to puffery, were made after-the-fact, or are forward-looking statements protected by the PSLRA. Without specific allegations demonstrating how Defendants' statements made at the time were material, false, or misleading, Plaintiffs have failed to state a claim.

*Finally*, Plaintiffs fail to sufficiently allege loss causation. Plaintiffs clearly allege that AEP's stock dropped because of a *Columbus Dispatch* news article that discussed Householder's alleged criminal activity, and which generated unsupported speculation that AEP may be

connected to that activity. But Plaintiffs plead no facts demonstrating AEP was involved in or knew of the criminal activity, and the news article did not correct any of the supposed false statements or omissions that Plaintiffs allege here. As a result, the stock could not have dropped based on any supposed revelation that Defendants made the misstatements or omissions alleged in the Complaint.

For each of these reasons, and because leave to replead is not readily granted in securities cases, the Court should dismiss the Complaint with prejudice.[3]

## BACKGROUND

AEP is a publicly-traded utility holding company that is one of America's largest generators of electricity. (Compl. ¶ 27). Together with various subsidiaries, AEP owns an approximate 43% interest in the power generated by OVEC, which owns and operates two coal-fired generation plants. (*Id.* ¶¶ 29–30.) Under the terms of AEP's agreement with OVEC, Ohio Power Company ("OPCo"), an AEP subsidiary, is entitled—and required—to purchase approximately 20% of the power OVEC's plants generate. (Decl., Ex. 1 at 19.)[4]

---

[3] For the Court's convenience, attached hereto as Exhibit A is a summary of the reasons that each alleged misstatement and omission is not actionable.

[4] "Decl." refers to the Declaration of Nicole A. Allen, which is attached hereto as Exhibit B. The relevant facts are drawn from the Complaint and from other sources that the Court is permitted to review. To the extent the Amended Complaint quotes, cites, or references a document, that document is considered part of the Complaint. It is well settled that the Court can take judicial notice of documents "embraced by pleadings" or that are "part of the public record." *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 995 (S.D. Ohio 2004) (citations omitted); *see also Com. Money Ctr., Inc. v. Ill. Union Ins.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (explaining that, when a document is attached to or "referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment"); *W. & S. Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 898 (S.D. Ohio 2014) (courts "may consider SEC filings, other public records, and other materials appropriate for the taking of judicial notice.").

AEP was by no means the primary architect or beneficiary of HB6. HB6 was introduced in the Ohio House of Representatives on April 12, 2019, and signed into law on July 23, 2019. (Compl. ¶¶ 1, 56). The bill included a billion-dollar bailout for two nuclear plants owned by FirstEnergy. (*Id.* ¶ 74.) In its final form, HB6 also included a provision that extended the time period (from 2024 to 2030) that OPCo was permitted to recover certain costs associated with purchasing power from OVEC. (Decl., Ex. 2 at 2; Decl., Ex. 3 at 206 of Ex. 13 thereto.)[5]

Plaintiffs allege HB6 "entailed a $61 million bribery scandal" involving Householder and his associates, two of whom have pled guilty to a RICO conspiracy. (Compl. ¶ 1.) Plaintiffs further allege that Generation Now, a 501(c)(4) organization connected to Householder, pled guilty to racketeering and admitted that it "received money from [FirstEnergy] for the benefit of . . . others in return for specific official action by HOUSEHOLDER relating to the passage and preservation of legislation that would go into effect and save the operation of two nuclear power plants in Ohio." (*Id.* ¶ 5, n.2, quoting Generation Now Plea Agreement.)

Plaintiffs do not plead any facts sufficient to demonstrate that AEP or the Individual Defendants knew of, or were involved in, Householder's alleged bribery scheme. Nevertheless, Plaintiffs' claims are based primarily on the assertion that Defendants' public statements made during the class period were false because they did not disclose certain facts related to Householder's scheme. In Count I, Plaintiffs allege that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder. In

---

[5] As first introduced on April 12, 2019, HB6 did not contain a provision extending the time period for which OPCo was permitted to recover certain costs associated with purchasing power from OVEC, which cost recovery was already permitted until 2024 under current law. (*See* Decl., Ex. 4; Decl., Ex. 3 at 206 of Ex. 13 thereto.) A provision extending cost recovery past 2024 was added to the version of the bill that passed the House on May 29, 2019, (*see* Decl., Ex. 5), but was removed sometime before June 27, 2019, (*see* Decl., Ex. 6), and then added back in the final version of the bill that passed in July. (*See* Decl., Ex. 7.)

Count II, Plaintiffs allege "control person" violations against the Individual Defendants under Section 20(a) of the Exchange Act.

## LEGAL STANDARD

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) unless it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The complaint "must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action." *TERA II, LLC v. Rice Drilling D, LLC,* No. 2:19-CV-2221, 2019 WL 6051115, at *5 (S.D. Ohio Nov. 15, 2019) (citing *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007)). The Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

A plaintiff asserting a federal securities fraud claim must satisfy the heightened pleading standards imposed by the PSLRA. *See In re Omnicare, Inc. Sec. Litig.* ("*Omnicare III*"), 769 F.3d 455, 472–73 (6th Cir. 2014). The PSLRA requires a plaintiff to "*state with particularity* facts giving rise to *a strong inference* that the defendant acted with the required state of mind." *Id.* (citing 15 U.S.C. § 78u-4(b)(2)) (emphasis added). That state of mind is scienter, which requires a plaintiff to plead particular facts establishing that each defendant acted with a "knowing and deliberate intent to manipulate, deceive, or defraud."[6] *Ley v. Visteon Corp.*, 543 F.3d 801, 809 (6th

---

[6] Recklessness may satisfy Section 10(b)'s scienter element, but only if Plaintiffs plead facts demonstrating that Defendants "engaged in highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Ricker v. Zoo Ent., Inc.*, 534 F. App'x 495, 499 (6th Cir. 2013) (citation omitted). This is a high standard that is only satisfied when the falsity of

Cir. 2008). When evaluating a plaintiff's allegations, courts "must consider the complaint in its entirety" and decide whether all of the facts collectively give rise to a strong inference of scienter, rather than evaluating any allegation in isolation. *Omnicare III*, 769 F.3d at 473 (citation omitted). Even assuming the allegations create a "powerful or cogent" inference of scienter, the complaint goes forward "only if a reasonable person would find the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*; *see also In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 856 (S.D. Ohio 2016) ("An inference of scienter . . . 'must be more than merely reasonable or permissible[]' . . . . it must be 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'") (quoting *Tellabs, Inc.*, 551 U.S. at 324). A plaintiff must plead scienter with respect to each defendant as of the time of each of the alleged misstatements or omissions. *See* 15 U.S.C. § 78u-4(b)(2) (requiring plaintiffs adequately plead scienter for "each act or omission"); *Loc. 295/Loc. 851 IBT Employer Grp. Pension Tr. and Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 703, 719–20 (S.D. Ohio 2010) (rejecting the group pleading doctrine and explaining that "the complaint must plead scienter with particularity as to each defendant in the case"). To evaluate whether a "strong inference" of scienter is adequately pled for an individual defendant, courts in this district sometimes consider the non-exhaustive list of factors identified in *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001),[7] although the Sixth Circuit has cautioned that no single factor is

---

the information should have been obvious or when defendants "consciously disregarded red flags." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 554 (6th Cir. 1999).

[7] The nine *Helwig* factors are: "(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with

controlling and the court must still analyze all of a plaintiff's allegations holistically. *See Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 469 (6th Cir. 2011). The Sixth Circuit also requires all fraud claims to satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Walker v. L Brands, Inc.*, Nos. 2:19-cv-3186 & 2:19-cv-3961, 2020 WL 6118467, at *7 (S.D. Ohio Oct. 16, 2020) (Morrison, J.).

In addition to pleading scienter, the PSLRA requires a plaintiff to plead an actionable misstatement or omission. To be actionable, a plaintiff must allege facts demonstrating that: (1) a defendant made a statement or omission that was false or misleading; and (2) the statement or omission concerned a material fact. *Omnicare III*, 769 F.3d at 470. Information is "material only if a reasonable investor would have viewed the misrepresentation or omission as having significantly altered the total mix of information" available. *Walker*, 2020 WL 6118467, at *9 (quoting *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)). Additionally, an alleged omission is actionable only if the defendant had a duty to disclose the information, and is material only if disclosure of the omitted facts are "necessary in order to make the statements made . . . not misleading." *Walker*, 2020 WL 6118467, at *8 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (citing 17 C.F.R. § 240.10b-5)).

---

a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs." 251 F.3d at 552.

## ARGUMENT

I. **The Court Should Dismiss Count I Because Plaintiffs Have Not Sufficiently Pled Scienter.**

    A. **Plaintiffs Do Not Allege Facts Sufficient To Infer That Defendants, Or Anyone Else At AEP, Knew About Or Participated In Householder's Criminal Bribery Scheme.**

Plaintiffs' claims fail because they do not plead a single particularized fact to support the conclusion that any of the Defendants knew about, or participated in, Householder's alleged bribery scheme. This negates the scienter element of their Section 10(b) claim because the only fraud Plaintiffs attempt to plead is based on the criminal bribery scheme Householder allegedly employed in connection with HB6. This is clear from the Complaint, which is premised on the notion that Defendants "fund[ed] Householder's criminal enterprise" (Compl. ¶ 1), were "involve[d] with the criminal enterprise" (*id.* ¶ 70), and which references "Householder" 90 times, "Generation Now" 48 times, "FirstEnergy" 17 times, and "Company A" (another reference to FirstEnergy) 5 times. Without adequate allegations that Defendants knew about or participated in Householder's scheme—including knowledge of Householder's alleged use of Generation Now and Coalition for Opportunity and Growth ("Coalition") to carry out the scheme—Plaintiffs' assertions that Defendants made omissions and misrepresentations related to AEP's support for HB6 or contributions to EOE do not demonstrate any intent to commit fraud.[8]

Plaintiffs' scienter allegations against Mr. Akins and Mr. Tierney are especially deficient. Plaintiffs fail to "plead scienter with particularity as to each defendant in the case," and as to each alleged misstatement or omission, *Loc. 295/Loc. 851 IBT*, 731 F. Supp. 2d at 703, 719–20, and fail to satisfy the heightened pleading standards of Rule 9(b), *Walker*, 2020 WL 6118467, at *7.

---

[8] AEP did not contribute money to Generation Now or Coalition and Plaintiffs do not plead otherwise.

Plaintiffs also fail to plead any of the nine *Helwig* factors. Plaintiffs do not credibly attempt to plead facts sufficient to support a finding that factors 2–9 are met, and the first factor (alleged "insider trading"), which Plaintiffs do purport to allege, is insufficiently pled as explained in detail in Section I.B, below. *See Omnicare III*, 769 F.3d at 484 (affirming dismissal of complaint where only one *Helwig* factor was adequately pled); *Ley*, 543 F.3d at 810–14 (affirming dismissal and finding no *Helwig* factors adequately pled).

As to all Defendants, the Sixth Circuit's decision in *Omnicare III*, 769 F.3d 455 (6th Cir. 2014), is instructive. The plaintiff in *Omnicare III* claimed that the company and several high-ranking executive defendants failed to disclose the results of three internal audits that revealed the company was engaged in "pervasive fraud" involving (among other things) the submission of "false and fraudulent" claims and invoices to Medicare and Medicaid. *Id.* at 462. Plaintiffs alleged the defendants knew about the fraud because the results of the internal audits were provided to Omnicare's audit and compliance committees and "immediately given to the [individual] defendants." *Id.* Rather than disclosing the fraud, however, the plaintiffs alleged the defendants knowingly misrepresented in SEC filings and other public statements that the company was in compliance with applicable federal regulations. *Id.* at 463–64.

Despite these allegations, the Sixth Circuit affirmed dismissal of the complaint because the plaintiffs failed to plead "concrete details" sufficient to establish the defendants' "actual knowledge" of the alleged wrongdoing. *Id.* at 482–83. For example, the plaintiffs failed to allege what the specific results of the audits demonstrated—*i.e.*, how many company facilities were involved, what specific billing irregularities were found, and how many supposedly fraudulent claims were involved. *Id.* at 482. Nor did the plaintiffs allege with particularly what specific information concerning the audit results was actually communicated to each of the individual

defendants. *Id.* As a result, the court found dismissal was appropriate because the plaintiffs made only "general statements" of knowledge and "heap[ed] inference upon inference" but "never allege[d] that Person A did Act B at Time C, [as] required by the PSLRA." *Id*. (alterations, quotations, and citations removed).

Plaintiffs' allegations of scienter in this case are significantly weaker than in *Omnicare III*. Plaintiffs go into great detail reciting the criminal charges and guilty pleas involving Householder and his associates, including Generation Now, but those criminal charges and guilty pleas do not identify anyone at AEP (including the Individual Defendants) as being involved in Householder's scheme.[9] To the contrary, the plea agreements on which Plaintiffs rely specifically state that the purpose of Householder's scheme was to "save the operation of two nuclear plants in Ohio"—plants owned and operated by FirstEnergy, *not AEP*. (Compl. ¶¶ 5, 77–79, quoting Generation Now and Cespedes Plea Agreements.) The plea agreement for Generation Now further states it received money from FirstEnergy—*not AEP*—which Generation Now took steps to conceal as part of carrying out the criminal scheme, the purpose of which was to save the FirstEnergy nuclear plants. (*Id.* ¶¶ 5 & n.2, 79.)

Plaintiffs allege in conclusory fashion that "AEP . . . knew that its contributions to EOE were being paid by EOE directly to Householder's criminal enterprise[.]" (*Id.* ¶ 86.) But Plaintiffs do not plead facts—and certainly no sufficiently particularized facts—to support their conclusion. The fact that AEP's Vice President of External Affairs, Tom Froehle, served on the board of EOE

---

[9] Even if someone from AEP was identified as having participated in the alleged scheme—and to be clear, no one has been—that alone would be insufficient to state a claim. Plaintiffs would still be required to plead particularized facts concerning what any participant in the scheme knew, when, how, and why that knowledge might be imputed to AEP. *See Loc. 295/Loc. 851 IBT*, 731 F. Supp. 2d at 721 (holding failure to establish scienter where plaintiffs failed to allege facts establishing that knowledge of corporate agents who participated in the alleged wrongdoing could be imputed to the corporation).

during the relevant time period, as Plaintiffs allege (*id.*), is legally irrelevant and grossly insufficient to conclude Mr. Froehle was aware of either Householder's bribery scheme or the role Generation Now or any other entity played in that scheme. *See Omnicare III*, 769 F.3d at 462.

Tellingly, Plaintiffs admit the grant agreement between EOE and Generation Now obligated Generation Now to use the money it received from EOE for legitimate purposes consistent with EOE's mission as a 501(c)(4) organization—specifically, "educating, equipping, and mobilizing . . . citizens to take action on critical economic and legislative issues." (Compl. ¶¶ 6, 85, quoting EOE-Generation Now Grant Agreement (Decl. Ex. 8).) Issue advocacy of this nature is precisely the type of activity 501(c)(4) organizations are authorized to undertake. *See* IRS, *IRS Issues Guidelines for Tax-Exempt Groups Engaged in Public Advocacy* (Dec. 23, 2003), https://www.irs.gov/newsroom/irs-issues-guidelines-for-tax-exempt-groups-engaged-in-public-advocacy (last reviewed/updated Mar. 3, 2020) ("Under the Internal Revenue Code, social welfare organizations . . . are permitted to engage in advocacy or lobbying related to their exempt purposes."). Indeed, the IRS has expressly stated that "[s]eeking legislation germane to [a 501(c)(4)] organization's programs is a permissible means of attaining social welfare purposes. Thus, a section 501(c)(4) social welfare organization may further its exempt purposes through lobbying as its primary activity without jeopardizing its exempt status." IRS, *Social Welfare Organizations* (Apr. 2, 2021), https://www.irs.gov/charities-non-profits/other-non-profits/social-welfare-organizations.

The grant agreement between EOE and Generation Now also clearly stated that EOE's contributions to Generation Now would be used "exclusively in connection with programs, efforts, and activities that promote the social welfare" and "may <u>not</u> be used in furtherance of any political or campaign intervention activities (as those terms are currently defined by the IRS)." (Decl., Ex.

8.) Plaintiffs plead no facts indicating anyone at AEP or EOE, including Mr. Froehle, knew EOE's contributions to Generation Now were being misused in violation of that written agreement.

Similarly, Plaintiffs' vague and unsubstantiated allegations that the Individual Defendants "were active and culpable participants in the fraud scheme" "[b]y virtue of their receipt of information reflecting the true facts regarding AEP's operations" (Compl. ¶ 82)—with no particular information about what "facts" Plaintiffs are referring to, when they were received, by whom, and what these mystery facts supposedly showed—do not give rise to a cogent and compelling inference of scienter. *See Omnicare III*, 769 F.3d at 482 (holding that, because "concrete details" of information allegedly provided to defendants are required to determine knowledge of falsity, dismissal is required where a plaintiff "merely makes general statements and heaps inference upon inference"); *Loc. 295/Loc. 851 IBT*, 731 F. Supp. 2d at 726 (holding no scienter where plaintiffs' allegations relied heavily on defendants' supposed service on committees and access to pertinent information in the absence of particular facts demonstrating defendants actually received the information).

Allegations that AEP "long sought the benefits" and ultimately did benefit from HB6 (Compl. ¶ 89), do not support a cogent and compelling inference of scienter because benefitting from some alleged misconduct does not create an inference of knowledge or participation in the misconduct. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (allegations that defendants profited from effect of misleading statements may "illustrate . . . motive and opportunity" but are insufficient to plead scienter); *Bondali*, *v. YumA Brands, Inc*., 620 Fed. App'x 483, 492 (6th Cir. 2015) (allegations that concealed information was important to profitability and director compensation only reflected motive, not scienter); *Darby v. Cent. Bus. Servs., Inc.*, 96 Fed. App'x 277, 283 (6th Cir. 2004) (allegations that defendants benefitted from inflated stock

12

price only reflected a motive for concealing the truth, and was insufficient for pleading scienter); *see also Omnicare III*, 769 F.3d at 483 (affirming dismissal of complaint because plaintiff failed to plead "concrete details" sufficient to establish the defendants' "actual knowledge" of the alleged wrongdoing).

Unable to plead facts necessary to support any plausible (let alone cogent and compelling) inference that any of the Defendants were aware of or involved in the purported criminal scheme, Plaintiffs attempt to inject an element of the sinister into the Complaint by referring to AEP's contributions to EOE as so-called "dark money contributions." (Compl. ¶¶ 2, 5, 7, 64, 73, 83–84, 87, 89, 99). Plaintiffs' characterization is legally meaningless. 501(c)(4) organizations, like EOE, operate pursuant to federal law—in particular, Section 501(c)(4) of the Internal Revenue Code— and there is no legal requirement that contributions made to those organizations be disclosed.[10] Thus, AEP's making of contributions to any 501(c)(4) organization adds nothing to an inference of scienter, particularly in light of the grant agreement between EOE and Generation Now specifically pled in the Complaint, which required Generation Now to use any money from EOE for specific and permissible purposes.

The Court should also reject Plaintiffs' unsupported contention that political contributions made by individual AEP employees or the AEP PAC to Householder and other Ohio representatives somehow "demonstrate[s] a level of intimacy and support" sufficient to "raise a strong inference of scienter." (*Id.* ¶ 94.) Making contributions to a politician who turns out to be

---

[10] *See* IRS, *Public Disclosure and Availability of Exempt Organizations Returns and Applications: Documents Subject to Public Disclosure*, https://www.irs.gov/charities-non-profits/public-disclosure-and-availability-of-exempt-organizations-returns-and-applications-documents-subject-to-public-disclosure (last reviewed/updated Jan. 7, 2021) ("With the exception of private foundations, an exempt organization is not required to disclose the name and address of any contributor to the organization.").

corrupt is a far cry from knowledge or participation in that corruption. Plaintiffs' scienter allegations are precisely the type of unsupported, vague speculation that *Omnicare III* and other Sixth Circuit authority prohibit. *See Omnicare III*, 769 F.3d at 481 (affirming dismissal because plaintiff failed to plead "concrete details" sufficient to establish defendants had "actual knowledge" of alleged wrongdoing); *Ashland*, 648 F.3d at 470 (affirming dismissal for failure to allege "*any* facts explaining why or how Oppenheimer possessed advance, non-public knowledge" of alleged wrongdoing) (emphasis in original).

### B. The Individual Defendants' Stock Sales Do Not Create The Necessary Strong Inference Of Scienter.

Plaintiffs' contention that scienter can be inferred from the Individual Defendants' stock sales (Compl. ¶¶ 91–92) similarly falls short of the PSLRA's standards. "The mere sale of stock is not enough to lead the Court to infer scienter." *In re Ferro Corp*, Nos. 1:04CV1440 & 1:04CV1589, 2007 WL 1691358, *14 (N.D. Ohio June 11, 2007); *In re Comshare*, 183 F.3d at 553 (affirming dismissal of complaint and explaining that "the charge that corporate officers engaged in insider sales at unusual or suspicious levels is probative of motive," but "do[es] not, without more, suffice to give rise to a 'strong inference' of scienter"). Rather, stock sales are probative *only* "when those sales are able to be related to" the alleged misstatements or omissions. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (explaining individual defendants' stock sales did not support inference of scienter because "the insufficient allegations of fraud elsewhere in the complaint have a spillover effect here").

Given the utter lack of any allegations to support that Mr. Akins or Mr. Tierney knew about Householder's fraud, the Court need not evaluate their stock sales to determine Plaintiffs have failed to plead scienter. But even if the Court did evaluate Messrs. Akins's and Tierney's stock sales, the sales do not support an inference of scienter.

To evaluate whether scienter might be supported by allegations of stock sales, courts in this district have considered (1) whether the alleged trades were normal or routine based on the defendant's trading history; (2) whether the profits reaped were substantial enough in relation to the defendant's compensation level; and (3) whether in light of the defendant's total stock holdings, the sales were unusual or suspicious. *In re Ferro Corp.*, 2007 WL 1691358, at \*14. Courts may also consider "the timing of the sales." *In re Vantive Corp.*, 283 F.3d at 1092. None of these factors support an inference of scienter here.

*First*, the largest stock sales at issue (18,573 shares for Mr. Tierney and 69,657 shares for Mr. Akins) occurred on February 24, 2020—four days after those shares vested.[11] Similarly, the majority of the sales Plaintiffs point to in May 2019 occurred immediately after or close in time to vesting events. (*See* Decl., Ex. 9; Decl., Ex. 10.) Plaintiffs plead no facts suggesting Messrs. Akins or Tierney intended anything other than to convert their recently-vested stock awards into cash, and the more reasonable inference is that they, like many executives, were selling stock "in the normal course of events." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (recognizing that "[a] large number of today's corporate executives are compensated in terms of stock and stock options" and "trade those securities in the normal course of events"). Additionally, in the instances in which Plaintiffs allege Messrs. Akins's and Tierney's stock settled for cash (as designated in grey in Plaintiffs' chart) (Compl. ¶ 91), Messrs. Akins and Tierney

---

[11] Based on publicly available Form 4s for Messrs. Akins and Tierney, on February 20, 2020, Mr. Tierney received 33,989 shares (Decl., Ex. 9), withheld 15,416 for taxes (*id.*), and sold the remaining 18,573 on February 24, 2020. (*Id.*) Likewise, Mr. Akins received 127,462 shares on February 20, 2020 (Decl., Ex. 10), withheld 57,805 for taxes (*id.*), and sold the remaining 69,657 on February 24, 2020. (*Id.*)

actually received cash—not stock—and had no discretion over the timing of those transactions.[12] Thus, the transactions cannot be considered unusual or suspicious.

*Second*, Plaintiffs make no allegations regarding Messrs. Akins's and Tierney's total compensation, as required to enable the Court to "fully understand the relationship the alleged insider trading had on [the executive]'s compensation structure." *In re Ferro Corp.*, 2007 WL 1691358, at *14–15 (holding no inference of scienter for failure to adequately plead facts about compensation); *In re Burlington Coat Factory*¸ 114 F.3d at 1423 (same). In fact, Messrs. Akins's and Tierney's 2019–2020 stock sales constituted, at most, approximately 33% and 26%, respectively, of their total compensation in those years (Compl. ¶ 91; Decl., Ex. 11 at 49),[13] which is insufficient to infer scienter. *See In re Ferro Corp.*, 2007 WL 1691358, at *14–15 (holding no inference of scienter where proceeds from stock sales were greater than 70% of annual compensation).

*Third*, the annual percentage of stock sales in comparison to settled shares that Plaintiffs allege (Compl. ¶¶ 91-92)—the calculation for which is unclear—even taken as true, do not purport to reflect sales as a percentage of Messrs. Akins's and Tierney's total *holdings*, and, in any event, are not large enough to support an inference of scienter. *See In re Vantive Corp.*, 283 F.3d at 1094–

---

[12] Plaintiffs incorrectly designate as "insider sales" two May 1, 2019 transactions that were, in fact, cash settlements—5,546 shares for Mr. Akins and 1,539 shares for Mr. Tierney. (Compl. ¶ 91; Decl., Ex. 9; Decl., Ex. 10.) There are other errors in Plaintiffs' chart that Defendants have not attempted to correct, but Defendants reserve the right to do so on reply to the extent those inaccuracies become relevant.

[13] Plaintiffs overstate Defendant Akins's and Tierney's stock sales. But even using Plaintiffs' inflated figures, Mr. Akins's alleged $9.8 million in stock sales in 2019-2020 constituted at most approximately 33% of his $30 million in total compensation for those years. (Compl. ¶ 91; Decl., Ex. 11 at 49.) Mr. Tierney's alleged $2.9 million in stock sales in 2019-2020 constituted at most approximately 26% of his $11 million in total compensation for those years. (*Id*.) This is insufficient to infer scienter as a matter of law. *See In re Ferro Corp.*, 2007 WL 1691358, at *14–15.

96 (no inference of scienter for sales of 74%, 26%, 32%, 48%, 55%, and 49% of holdings); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) (same for sale of 48% of holdings).

*Fourth*, the stock sales at issue occurred five to fourteen months *before* publication of the July 2020 *Columbus Dispatch* article that Plaintiffs claim triggered their losses. Plaintiffs allege no facts to suggest Messrs. Akins or Tierney had advance knowledge of the article or control over when it was published. This "dissipate[s]" any inference of suspicion. *Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d, 933, 940 (7th Cir. 2018); *see also In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) ("A broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter."); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 985, 1002–03 (E.D. Wis. 2009) (holding stock sales nine months before market learned of alleged fraud not suspicious).

*Finally*, the class period stock sales by Mr. Akins were made pursuant to a 10b5-1 plan (Decl., Ex. 10), which negates any inference of scienter because "it is well established that trades under 10b5-1 plans do not raise a strong inference of scienter." *Woolgar v. Kingstone Cos., Inc.*, 477 F. Supp. 3d 193, 236 (S.D.N.Y. 2020); *Elam v. Neidorff*, 544 F.3d 921, 928 (8th Cir. 2008) (same).

### C.    The Only Reasonable Inference Is That There Was No Scienter.

Taken as a whole, Plaintiffs' allegations are patently inadequate to support any inference of scienter. They show, at most, that AEP contributed to an organization (EOE), that contributed to another organization (Generation Now), that was not in any way controlled by Defendants, but allegedly was used by Householder and his associates in a bribery scheme that Defendants knew nothing about and that was designed to benefit a completely different energy company. Defendants' knowledge of specific fraudulent conduct cannot be inferred on these facts. Plaintiffs

17

simply do not plead any direct connection between the Individual Defendants, AEP, and the specific fraud underlying Plaintiffs' claims (Householder's bribery scheme). As a result, Plaintiffs have failed to plead scienter and their claims must be dismissed.

## II. The Court Should Dismiss Count I For The Independent Reason That Plaintiffs Fail To Plead Any Actionable, Material Misstatements Or Omissions.

Faced with their inability to allege AEP or the Individual Defendants knew of any wrongdoing by Householder and his associates, Plaintiffs point to snippets of public statements and claim Defendants should have disclosed more about AEP's support for HB6 and involvement in the legislative process. But none of the alleged omissions or misstatements were material or required disclosure in order to make the identified statements not misleading, particularly in light of AEP's extensive public disclosures on the topics about which Plaintiffs complain. These defects provide an independent basis for the Court to dismiss the Complaint.

### A. Defendants Did Not Omit Or Misstate Material Information Concerning AEP's Support For HB6.

Six of the eight alleged omissions or misstatements on which Plaintiffs rely to support their claims are statements Defendants made about the HB6 legislation, either prior to its being adopted (Compl. ¶¶ 54–55), shortly after HB6 was signed into law (*id.* ¶¶ 60, 62), or around the time of the referendum. (*Id.* ¶¶ 65–66, 69–70.) In each instance, Plaintiffs claim Defendants' statements misled investors about the nature and extent of AEP's support for HB6, primarily by not disclosing AEP's desire for OVEC cost recovery provisions in the legislation. (*Id.* ¶¶ 56, 59, 61, 63–64, 67, 71.)

For example, Plaintiffs allege that Mr. Tierney, in an April 21, 2019 conference call in which he discussed the draft HB6 legislation, concealed from investors that the "primary driver for AEP's lack of support for HB6" at that time "was the lack of any cost-recovery provision governing AEP's own coal-fired plants." (*Id.* ¶¶ 54–56.) Plaintiffs similarly allege that Mr. Akins's

statements on July 25, 2019—two days after HB6 became law—that AEP saw "positives from [the HB6] legislation . . . namely recovery of OVEC [costs] . . . on a statewide basis through 2030," (¶ 62, quoting Q2 2019 earnings call (Decl., Ex. 12)) created the misimpression that HB6 was passed pursuant to legitimate process and that AEP was not "actively involved in getting the bill passed." (*Id.* ¶ 63.) And Plaintiffs allege that AEP's statements in a September 2019 newsletter discussing certain provisions of HB6 and the impending referendum were "false and misleading" because "Defendants concealed that AEP was a driving force behind the coal-fired cost recovery provisions in HB6," and "created the false impression that only FirstEnergy was opposing the referendum" by stating (correctly) that FirstEnergy filed a challenge to the referendum petition. (*Id.* ¶¶ 65–68.)

Plaintiffs' contention that Defendants' statements somehow concealed or misled investors about AEP's support for HB6—in particular, the OVEC cost recovery provisions in the legislation—are belied by AEP's numerous public disclosures addressing the importance of OVEC cost recovery to its financial performance, and by Plaintiffs' own allegations acknowledging AEP's extensive efforts to obtain OVEC cost recovery over several years. In the face of AEP's robust disclosures, nothing Plaintiffs allege Defendants concealed could have changed the "total mix of information" available to investors as a matter of law. *See Walker*, 2020 WL 6118467, at *11 (dismissing complaint on this basis).

Indeed, Plaintiffs devote thirteen paragraphs of the Complaint to explaining all of the ways in which AEP clearly and publicly disclosed the importance of OVEC plant cost recovery to its business. (Compl. ¶¶ 40–52.) According to Plaintiffs, AEP was "seeking cost recovery for the OVEC Plants" as early as 2014. (*Id.* ¶ 43.) In May 2015, AEP's then-COO publicly addressed the

need for that cost recovery in front of the Public Utilities Commission of Ohio ("PUCO"). (*Id.*)[14] AEP then engaged in "years of briefing, discovery, hearings and public comments" related to its cost-recovery request, which the PUCO approved in March 2016, but FERC subsequently denied. (*Id.* ¶¶ 44–45.) FERC's denial resulted in legal challenges that made their way to the Ohio Supreme Court (*id.* ¶ 49), and resulted in Mr. Akins stating in a first quarter 2017 investor call that AEP was "***looking for permanent support***" for cost recovery for OVEC, including "***through legislation***." (*Id.* ¶ 50, quoting Q1 2017 earnings call.)

Plaintiffs admit that Ohio House Bill 239 ("HB239") was introduced in the Ohio House in May 2017. (*Id.* ¶ 52.) "As introduced, HB239 would provide nearly $256.6 million in subsidies to the OVEC Plants to be recovered annually from ratepayers for the 24-year period of 2017–2040," and would have "guaranteed income for all the OVEC Plants' owners for the remaining years of the ICPA." (*Id.*) AEP publicly supported HB239 and lobbied for the bill,[15] but ultimately it did not pass. (*Id.* ¶¶ 50, 52.)

HB6 was formally introduced in the Ohio House of Representatives on April 12, 2019. (*Id.* ¶ 56.) Every one of AEP's ten lobbyists made public filings that disclosed "active advocacy" on behalf of AEP in support of HB6 in both the January–April 2019, and May–August 2019, lobbying periods. (Decl., Exs. 14–17.) On April 23, 2019 (11 days after HB6's introduction), Mr. Froehle publicly testified on behalf of AEP as an "interested party" in front of the House Energy and

---

[14] Pablo Vegas, who Plaintiffs identify as "AEP's . . . President and [COO]" in May 2015 (Compl. ¶ 43), was actually the President and COO of OPCo. Plaintiffs make other factually inaccurate statements in their Complaint, which Defendants have not attempted to point out or correct to the extent such statements are not directly relevant to this motion.

[15] Mr. Froehle's publicly available lobbying disclosures during that time stated that he lobbied in regards to HB239 on behalf of AEP and that the bill would have "[a]llow[ed] recovery of national security generation resource cost." (Decl., Ex. 13.)

Natural Resources Subcommittee on Energy Generation. (Decl., Ex. 18.) Plaintiffs acknowledge that, on May 22, 2019, Mr. Froehle wrote a letter on behalf of AEP to the Members of the Ohio House of representatives, stating that "American Electric Power – Ohio supports House Bill 6" and explaining some of the reasons for AEP's support. (*Id.* ¶ 7, quoting Mr. Froehle's May 22, 2019 letter (Decl., Ex. 19).)

On June 12, 2019, Mr. Froehle publicly testified on behalf of AEP on HB6 in front of the Senate Committee on Energy and Public Utilities (*id.* ¶ 90(c)), stating, in part:

> As it relates to Ohio Valley Electric Corporation (OVEC), HB 6 provides ongoing certainty for an important and longstanding baseload generating asset. The bill also includes rates caps for customers while allowing for the continued operation of OVEC generating units, which will provide certainty for AEP Ohio's customers and Ohio jobs.

On June 27, 2019, Mr. Froehle testified again in front of the Senate Committee on Energy and Public Utilities—this time as an opponent of HB6 because the then-current version of the bill had eliminated cost recovery for OVEC and made other revisions objectionable to AEP. (Decl., Ex. 6.) Significantly, Mr. Froehle testified that AEP had "worked carefully" with the legislature to ensure that HB6 provided, among other things, "greater certainty to legacy and future energy generation in Ohio," but that AEP opposed the new version of the bill unless the Committee would "[e]ither reinstate House language concerning the Ohio Valley Electric Corporation, along with the amendments submitted by utilities to the Senate, or amend the Senate language to achieve the same effect." (*Id.*) Froehle noted that the OVEC change—among others—was necessary "for AEP Ohio to support the legislation." (*Id.*)

HB6 became law on July 23, 2019, and ultimately included an extension of AEP's ability to recover costs related to its OVEC plants from 2024 (the end date already in place) (Decl., Ex. 3 at 206 of Ex. 13 thereto) through 2030. (Decl., Ex. 2, at 16.) Additional details related to AEP's efforts to recover costs associated with its OVEC plants, and support for HB6, are disclosed in

numerous AEP SEC filings.[16] AEP also disclosed its participation in the legislative and regulatory process more generally in its publicly issued Corporate Accountability Reports, including between 2018 and 2019, which Plaintiffs themselves rely on in the Complaint. (*See e.g.,* Compl. ¶ 88 (quoting AEP's 2018 CAR) ("AEP has a public policy strategy that seeks to influence decisions being made at Congress, FERC, state legislatures and regulatory commissions. We do this to mitigate our risk exposure and to help us achieve our business objectives."); Decl., Ex. 20 at 16 ("As our industry evolves, we will continue working with our regulators and legislators at the federal, state and local levels."); *id.* at 19 ("For the benefit of all stakeholders, we actively participate in the political process and in lobbying activities at the national, state and local levels.").)

In light of these disclosures—which go back to at least 2014—no reasonable investor would think, as Plaintiffs claim, that Defendants misrepresented or concealed AEP's active support for HB6 (Compl. ¶¶ 59, 63–64, 71); AEP's desire for the OVEC cost recovery provisions in HB6

---

[16] From 2014 through 2019, AEP's public filings discuss its OVEC-related losses and AEP's commitment to find a legislative and/or regulatory solution. (*See, e.g.,* Decl., Ex. 21 at 18, and at 4 of Ex. 13 thereto ("OPCo has filed an application with the PUCO to approve a purchased power agreement (PPA) rider [to recover OVEC-related costs] . . . . [which] would initially be based upon OPCo's contractual entitlement under the Inter-Company Agreement which is approximately 20% of OVEC's capacity"); Decl., Ex. 22 at 18, and at 4–5, 95, 167, 180 of Ex. 13 thereto (disclosing "$27 million" of losses "from a power contract with OVEC"); Decl., Ex. 23 at 18, and at 28, 166–68 of Ex. 13 thereto (discussing challenges in front of the PUCO to "the OVEC-only PPA Rider"); Decl., Ex. 3 at 19, and at 6, 32–33, 133 of Ex. 13 thereto (noting that the company recovered $62 million from "recovery of losses from a power contract with OVEC," which became possible after the PUCO "approved a PPA rider beginning in January 2017 to recover any net expense related to the deferral of OVEC losses starting in June 2016"); Decl., Ex. 24 at 18, and at 30–33, 212–213 of Ex. 13 thereto (disclosing an October 2018 appeal "filed with the Ohio Supreme Court challenging various approved riders," including for the rider providing for OVEC cost recovery); Decl., Ex. 1 at 18–19, and at 4, 28 of Ex. 13 thereto (describing HB6, which "replace[d] the PPA rider and enable[d] OPCo to continue recovering the net cost associated with the [OVEC] ICPA, including any additional contractual entitlement received as a result of the FirstEnergy Solutions (FES) bankruptcy, through 2030")). The Court may take judicial notice of these materials. (*Supra* at 3, n. 4.)

or that the inclusion of such provisions was important to AEP's support of HB6 (*id.* ¶¶ 56, 61, 67); or the fact that AEP was working directly with the legislature on those very issues. (*Id.* ¶¶ 61, 63.) Indeed, it is difficult to conceive that any investor would have made a different investment decision had AEP provided even more information about the importance of cost-recovery provisions to its support for HB6 or its legislative strategy more generally. Rather, AEP's numerous statements addressing those exact issues render any information Plaintiffs claim was missing from any particular disclosure immaterial because it would not have altered the total mix of information available to investors. *See Ashland*, 648 F.3d at 468 (holding alleged omissions inactionable because they consisted of public information); *Walker*, 2020 WL 6118467, at *11 (finding plaintiff's proposed inferences "unreasonable and thus, immaterial" given that it was "widely known that L Brands' performance had declined steadily for several years").

## B. Defendants Non-Disclosure Of 501(c)(4) Contributions Does Not Give Rise To An Actionable Omission.

Plaintiffs' allegations that Defendants "concealed" AEP's contributions to EOE (*e.g.*, Compl. ¶¶ 56-57, 59, 61, 64, 67, 71, 73) are not actionable because Defendants had no duty to disclose the contributions, and the contributions were not material.

### 1. Defendants Had No Duty To Disclose AEP's 501(c)(4) Contributions.

It "bears emphasis that §10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all information." *Walker*, 2020 WL 6118467, at *8 (citation omitted). Rather, an alleged omission is only actionable when the defendant has a "duty to affirmatively disclose" the information, which duty may arise by statute or if the plaintiff sufficiently pleads facts demonstrating that the omitted information was "necessary in order to make [a defendant's prior] statements . . . not misleading." *Id.*; *see also In re EveryWare Glob.*, 175 F. Supp. 3d at 870 ("An omission is only actionable if there was a prior statement of material fact that is false, inaccurate,

incomplete or misleading in light of the undisclosed information.") (citation omitted). Here, Plaintiffs have alleged no facts that would trigger a duty to disclose contributions to EOE, much less contributions from EOE to Generation Now, particularly given the absence of any factual allegations that Defendants knew its contributions to EOE, or EOE's contributions to Generation Now, were allegedly being misused as part of a bribery scheme.

Plaintiffs have not identified any statutory duty to disclose 501(c)(4) contributions, and there is none. To the contrary, there is no IRS regulation or other authority requiring an organization to disclose its contributions to 501(c)(4) organizations. IRS regulations specifically exempt 501(c)(4) organizations from disclosing their contributors.[17] Contributions to 501(c)(4) organizations do not meet the definition of political "contributions" that are subject to disclosure under federal or Ohio law, *see* 11 CFR § 100.52(a), § 100.54; Ohio Rev. Code § 3517.01(C)(5),[18] and thus are *not* political contributions as a legal matter, as Plaintiffs incorrectly assert. (Compl. ¶¶ 2, 59, 61, 71.)

Plaintiffs' reliance on AEP's "Corporate Political Contributions Policy" is also misplaced. (*Id.* ¶¶ 56, 61, 64, 67, 71, 73.) That policy "addresses the processes for requesting and authorizing the making of Corporate Political Contributions"—meaning, the process for requesting and authorizing AEP to contribute to "candidates for elected office" under federal and state law. (Decl.,

---

[17] *See supra* at 13, n. 10.

[18] Under federal law, a "contribution" is "[a] gift, subscription, loan, . . . advance or deposit of money or anything of value . . . made by any person *for the purpose of influencing any election for Federal office*," 11 CFR § 100.52(a) (emphasis added), or "[t]he payment by any person of compensation for the personal services of another person if those services are rendered without charge to a political committee for any purpose." *Id.* § 100.54. Under Ohio law, a "contribution" is "a loan, gift, deposit, forgiveness of indebtedness, donation, advance, payment, or transfer of funds or anything of value . . . which contribution is made, received, or used *for the purpose of influencing the results of an election*." Ohio Rev. Code § 3517.01(C)(5) (emphasis added).

Ex. 25.) The policy does not purport to impose on AEP a disclosure requirement related to its contributions to 501(c)(4) organizations, and in fact states that "[c]ontributions to entities qualified under sections 501(c)(4) . . . of the Internal Revenue Code are not included under this policy," provided such contributions are not be used in the same way as a corporate political contribution— *i.e.*, contributed to a candidate for elected office. (*Id.*) Plaintiffs do not allege that anyone at AEP knew that any money AEP contributed to EOE was subsequently contributed to a candidate for elected office, nor was such a contribution permissible under the EOE grant agreement with Generation Now. (Decl., Ex. 8.)

Plaintiffs do not plead any facts giving rise to a duty to disclose AEP's contributions to EOE, given that there are no particularized allegations that anyone at AEP knew EOE's contributions to Generation Now were being misused in the Householder scheme. *See Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 575 (6th Cir. 2008) (finding no duty to disclose prohibited payments to state official that jeopardized government contract, where there was no evidence of internal investigations or reports suggesting that defendants were aware of risk). Courts have made clear that an allegation of illegal conduct, on its own, does not create a duty to disclose information related to the alleged misconduct. *See Omnicare I*, 583 F.3d at 945–46 (finding statements regarding defendants' legal compliance not actionable absent detailed allegations that defendants knew statements were false when made); *City of Pontiac Policemen's & Firemen's Ret. Sys.*, 752 F.3d 173, 184 (2d Cir. 2020) (no duty to disclose "uncharged, unadjudicated wrongdoing") (quoting *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y.1991)).[19]

---

[19] The absence of factual allegations supporting any inference that Defendants had knowledge of the Householder scheme is a particularly compelling reason to dismiss given that Plaintiffs' allegations of indictments and guilty pleas notably omit any reference to AEP in those public charges—and even if any such allegations were directed at AEP, that would not be sufficient. *See Societe Generale Sec. Servs., GbmH v. Caterpillar,* Inc., No. 17-CV-1713, 2018 WL 4616356, at

Nor have Plaintiffs pled facts demonstrating that any information they claim Defendants omitted was "necessary" to make the statements at issue not misleading. *First*, the fact that Defendants made statements addressing HB6 (Compl. ¶¶ 54–55, 60, 62, 65–66, 69–70), or AEP's political contributions or lobbying (*id.* ¶¶ 58, 72), in general does not impose on them a duty to discuss every potentially relevant aspect of those topics. *See Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 246 (6th Cir. 2015) (company was not obligated to "disclose all facts" it had regarding the company's recent performance on an earnings call because "such a rule would require almost unlimited disclosure on any conceivable topic related to an issuer's financial condition whenever an issuer released any kind of financial data") (quotation omitted); *Walker*, 2020 WL 6118467, at *11 (CFO "was not obligated [to] disclose all future possibilities regarding [a] dividend" merely "because he chose to speak about the dividend" in response to an analyst's question); *I.B.E.W. v. Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 630 (S.D. Ohio 2011) (statements company officers made about new projects were not misleading even though the officers "did not disclose all of the information they had" about project difficulties).

---

*6 (N.D. Ill. Sept. 26, 2018) ("[S]ecurities laws generally do not impose such a duty upon publicly traded corporations to confess to uncharged, unadjudicated claims of wrongdoing."); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 27–28 (1st Cir. 1987) (finding no securities violation based on duty to disclose where company did not disclose impending bribery charges against company officers until eve of indictment); *In re Veon Ltd. Sec. Litig.*, No. 15-cv-08672 (ALC), 2021 WL 930478, at *5 (S.D.N.Y. March 11, 2021) (securities laws do not create "a rite of confession" whereby corporations have a duty "to disclose uncharged, unadjudicated wrongdoing"). When a securities claim is premised on the nondisclosure of a defendant's involvement in an illegal scheme, a complaint must plead defendant's involvement in the scheme with particularity. *Gamm v. Sanderson Farms, Inc*., 944 F.3d 455, 463–66 (2d Cir. 2019) (dismissing claim premised on nondisclosure of defendant's involvement in antitrust conspiracy because complaint did not plead particularized facts detailing defendant's involvement in the conspiracy); *In re FBR Inc. Sec. Litig*., 544 F. Supp. 2d 346, 354 (S.D.N.Y. 2008) (dismissing claim based on non-disclosure of involvement in insider trading scheme because plaintiffs failed to plead with particularity that "executives knowingly provided substantial assistance to those engaged in insider trading").

26

*Second*, there is no nexus between Defendants' actual statements and what Plaintiffs claim was omitted. Plaintiffs repeatedly claim that Defendants concealed that AEP "made substantial contributions to Householder's criminal enterprise," was "actively involved in funding the passage and defense of HB6," "secretly funnel[ed]" money to Generation Now and Coalition, or something similar. (Compl. ¶¶ 56–57, 59, 61, 63–64, 67, 71, 73.) But the statements Plaintiffs identify as mandating additional disclosure simply do not sufficiently relate to those allegedly undisclosed topics. Instead, they consist of the following: observation that "[i]f [HB6 is] just a bailout for one company or another, it's not as beneficial to all Ohio customers" (*id.* ¶ 55, quoting Q1 2019 earnings call (Decl., Ex. 26)); disclosure that two days after HB6 was signed into law "[m]anagement is analyzing the impact of [HB6]," but "cannot estimate the impact" at this time (*id.* ¶ 60, quoting 2019 Q2 10-Q, (Decl., Ex. 27 at 2)); description of the passage and various provisions of HB6 (*id.* ¶ 62); summary of certain provisions of HB6 (*id.* ¶¶ 65, 69, 70); and discussion of the possibility of a referendum on HB6. (*Id.* ¶ 66.) Because what Plaintiffs claim was omitted is not "sufficient[ly] connected to Defendants' [statements] to make those public statements misleading," Defendants had no duty to disclose the purportedly omitted information. *See In re ITT Educ. Servs., Inc. Sec. & S'holder Derivatives Litig.*, 859 F. Supp. 2d 572, 579 (S.D.N.Y. 2012) (dismissing complaint because plaintiffs did not establish any "direct connection between Defendants' statements regarding the sources of its revenue and enrollment growth and the omitted information regarding [the company's] predatory business practices") (quotation omitted); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1071 (9th Cir. 2008) (dismissing complaint where plaintiff failed to plead a sufficient connection between defendant's statements "regarding its financial health" and the allegedly omitted information concerning a regulatory investigation); *In re TransDigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 766 (N.D.

Ohio 2020) (dismissing complaint where there was no "direct nexus between the illegal conduct and the challenged statements").

### 2. Defendants' Contributions To EOE Were Not Material.

Defendants' non-disclosure of AEP's contributions to EOE are not actionable for the separate reason that the contributions were not material. Plaintiffs allege AEP concealed $550,000 in contributions to EOE in 2019 (the only contributions during the proposed class period), and a total of $900,000 in contributions to EOE between 2017 and 2019. (Compl. ¶¶ 4, 57, 59, 61, 64, 67, 71, 73.) They further allege that AEP concealed that its contributions to EOE "increased ten-fold from $50,000 in 2018 to $550,000 in 2019." (*Id.* ¶ 61.)

The Court must evaluate Plaintiffs' allegations in the context of AEP's "total financial picture." *See In re Nokia Corp. Sec. Litig.*, 423 F. Supp. 2d 364, 408 (S.D.N.Y. 2006). Significantly, because AEP generated $15.5 billion and $14.9 billion in revenue in 2019 and 2020 (Decl., Ex. 28 at 125) and had around a $40 billion market capitalization (Decl., Ex. 1; Decl., Ex 28), the contributions Plaintiffs complain about are immaterial as a matter of law. *See ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009) ("An accounting classification decision that affects less than one-third of a percent of total assets does not suggest materiality"); *In re Nokia Corp. Sec. Litig.*, 423 F. Supp. at 408 (dismissing case where alleged misstatements concerning "millions of dollars" of defective products were not material "in relation to [Defendant's] total financial picture," which included "net sales over $37 billion"); *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160–61 (S.D.N.Y. 2003) ("The undisputed portions of the Company's financial statements referenced in the Complaint establish that an inflation of $217 million in the Company's revenues for the relevant period amounts to about 0.3% of Duke Energy's total revenues for that period—an immaterial percentage as a matter of law."). Indeed, it is only through the inference of AEP's involvement in

28

Householder's illegal scheme that the contributions could possibly be considered material. But as explained herein, Plaintiffs offer no specific factual allegations to support that inference, as required to sufficiently plead their claims, so the Court must reject it. (*See* Section I.)

In addition, Plaintiffs' allegations that Defendants concealed contributions to EOE so that AEP could "advocate for HB6 in the dark" and "fund the passage of HB6," including "HB6's coal-fired cost recovery amendments" (Compl. ¶¶ 61, 64, 67, 71, 73), do not state a claim for the same reasons described in Section II.A—namely, that AEP's extensive disclosure of its support for HB6, including related to the OVEC cost recovery provisions, render any allegedly omitted information on that same topic immaterial. (*See* Section II.A, citing authority).

### C. The Alleged Misstatements And Omissions Are Insufficiently Pled For Several Other Reasons.

Plaintiffs' allegations are deficient, and therefore not actionable, for a variety of other reasons.

***Inactionable Opinion Statements.*** Mr. Tierney's comments in the April 2019 investor call that, "we think if there's a full package where all of Ohio customers can benefit, then [HB6 is] a worthy effort" (Compl. ¶ 55, quoting Q1 2019 earnings call (Decl., Ex. 26)), is an opinion statement that is not actionable. *See Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 Fed. App'x 237, 247 (6th Cir. 2015) (holding statements of opinion to be inactionable where plaintiffs failed to plead facts showing that defendants did not believe their opinions to be true when made); *In re Yum! Brands, Inc. Sec. Litig.*, 73 F. Supp. 3d 846, 863–64 (2014) (holding "vague, subjective assertions, such as 'strict' food safety standards, [etc.]" were "mere opinions of management and hold no obvious, objective meaning to a reasonable investor" where statements did not refer to purported hard evidence). Similarly, Mr. Akins's July 25, 2019 statement that, "as far as AEP is

concerned, we see positives from this legislation for us . . ." (Compl. ¶ 62, quoting Q2 2019 earnings call (Decl., Ex. 12)), is also an inactionable opinion.[20]

*Inactionable Puffery*. The May 9, 2019 Corporate Accountability Report addressing AEP's lobbying and political contributions, which states, in part, that AEP "believe[s] in transparency and active participation in public debate" and "publicly discloses lobbying activities and political contributions" (Compl. ¶ 58, quoting 2019 CAR (Decl., Ex. 20)), and the May 20, 2020 CAR which similarly said "[w]e believe in transparency and active participation in public policy development, regardless of the issue or position" (*id.* ¶ 72, quoting 2020 CAR), are not actionable because those statements are not "tethered to any kind of objective standard" and lack sufficient specificity to be material. *Walker*, 2020 WL 6118467, at *11. Indeed, courts have determined that statements touting a company's "transparency" are "textbook examples of inactionable puffery." *See In re MGT Cap. Invs., Inc. Sec. Litig.*, No. 16 CIV. 7415 (NRB), 2018 WL 1224945, at *13 (S.D.N.Y. Feb. 27, 2018); *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 902 (5th Cir. 2018) (agreeing with the district court that "generalized statements about [the company's] transparency, quality, and responsibility are the sort of puffery that a reasonable investor would not rely on").

*Forward-Looking Statements.* Three of the statements are inactionable because they are forward-looking statements accompanied by meaningful cautionary language. Statements indicating that a company is evaluating the ramifications of certain legislation or that certain

---

[20] As explained immediately below, the statement "we see positives from this legislation for us . . ." (Compl. ¶ 62, quoting Q2 2019 earnings call (Decl., Ex. 12)) is also a forward-looking statement. The Court can find that the statement is inactionable on the ground that it is a statement of opinion and a forward-looking statement. *See Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*, 614 F. App'x 237, 246-47 (6th Cir. 2015) (holding statement was inactionable because it was both forward-looking and an opinion).

legislation's impact is difficult to predict or still unknown are considered forward-looking. *See In re 21st Century Holding Co. Sec. Litig.*, No. 07-61057-CIV, 2008 WL 5749572, at *11 (S.D. Fla. Nov. 7, 2008) (holding that statement regarding projection of how recently-passed legislation would impact the company was forward-looking because it "appears to be a statement of future economic performance or a statement containing a projection or estimate"); *Omnicare I*, 583 F.3d at 943 (noting that "safe-harbor excuses liability for defendants' projections, statements of plans and objectives, and estimates of future economic performance") (internal quotations and citations omitted).[21] Here, (1) Mr. Tierney's explanation of AEP's position "if" HB6 ended up being structured to provide a bailout for one company (Compl. ¶ 55, quoting Q1 2019 earnings call (Decl., Ex. 26)); (2) the statement that AEP was "analyzing the impact" of the legislation and "cannot estimate [its] impact" (*id.* ¶ 60, quoting 2019 Q2 10-Q (Decl., Ex. 27 at 2)); and (3) Mr. Akins's statement in July 2019, two days after HB6 became law, that "we see positives from this legislation" (*id.* ¶ 62, quoting 2019 Q2 earnings call (Decl., Ex. 12)), are all forward-looking.

### No Nexus Between the Challenged Statement and Alleged Misstatement or Omission.

Plaintiffs' attempts (Compl. ¶¶ 61, 63, 68) to cast certain of Defendants' statements as creating "false" or "misleading" "impression[s]" fail because there is no nexus between Plaintiffs' proposed

---

[21] AEP's forward-looking statements were "accompanied by meaningful cautionary statements," rendering them inactionable under the PSLRA's safe harbor provision. *See I.B.E.W. v. Ltd. Brands, Inc.*, 788 F. Supp. 2d 609, 633, 635 (S.D. Ohio 2011) (holding that defendant provided "adequate cautionary language" by identifying the "risk associated with [defendant's] new distribution center" in defendant's "third quarter form 10–Q"). Specifically, AEP's 10-Q addressed "risk factors" that "could cause actual results to differ materially from those in the forward-looking statements." (Decl., Ex. 27 at v-vi). Those risk factors included: "The ability to recover fuel and other energy costs through regulated or competitive electric rates"; "[n]ew legislation"; and "[t]he ability to recover through rates any remaining unrecovered investment in generation units that may be retired before the end of their previously projected useful lives." (*Id.*) During both earnings calls from which Plaintiffs quote, an AEP representative explicitly noted that AEP would be "making forward-looking statements during the call" and referred listeners to AEP's "SEC filings for a discussion" of risk factors. (Decl., Ex. 26; Decl., Ex 12.)

inferences and the statements themselves. *See Walker*, 2020 WL 6118467, at *11, 13–14 (dismissing because plaintiffs' proposed inferences were not reasonable); *In re ITT Educ. Servs.*, 859 F. Supp. 2d at 579 (dismissing because plaintiffs did not establish any "direct connection" between Defendants' statements and the allegedly omitted information); *see also supra* at 27-28 (citing cases). In *Walker*, the plaintiff alleged that certain statements were misleading because they created "false impressions," but this Court refused to accept those proposed inferences because they were not reasonable based on a plain reading of the statements, and the plaintiff did not allege the statements were false. 2020 WL 6118467, at *11, 13, 14. Here, Plaintiffs allege that Mr. Akins's general statements about HB6, "including congratulating Householder," created the "false impression" that "the legislation was drafted and passed pursuant to a legitimate process" and that "AEP was merely a distant beneficiary of the bill." (Compl. ¶ 63.) But Plaintiffs' proposed inferences are not reasonable because there is no nexus between the statement and those topics (it is simply a general statement about the legislation passing), and because Plaintiffs do not allege the statement is facially false. Plaintiffs' other allegations of "false" and "misleading" "impressions" (*id.* ¶¶ 61, 68) are not viable for the same reasons.

## III. The Court Should Dismiss Count I For The Independent Reason That Plaintiffs Have Failed To Adequately Plead Loss Causation.

"Loss causation requires a causal connection between the material misrepresentation and the [Plaintiff's] loss." *Omnicare I*, 583 F.3d at 944 (quotations omitted) (dismissing for failure to allege loss causation). To adequately plead loss causation, a complaint must "explain" how the alleged misstatements or omissions "were revealed to be false and thereby caused a drop in the stock price." *Id.* (holding complaint failed to allege loss causation because it did not explain why news article's revelation of glitches with company's Medicare Part D program, and not government raids on company facilities, caused a decline in stock price); *Metzler*, 540 F.3d at 1064

(explaining a plaintiff must "plead . . . the necessary connection between defendant's fraud and the actual loss"); *D.E. & J Ltd. P'ship v. Conaway*, 133 Fed. App'x 994, 1000–1001 (6th Cir. 2005) (affirming dismissal of complaint where plaintiff pled "nothing more than note that a stock price dropped after a bankruptcy announcement, [and] never alleg[ed] that the market's acknowledgment of prior misrepresentations caused that drop").

Courts have made clear that disclosure of a risk or potential for fraud does not plead loss causation. For example, the court in *Metzler*, 540 F.3d at 1064, held that plaintiffs failed to plead loss causation against the operator of certain private colleges based on a news story disclosing the Department of Education's investigation into misconduct at one of the operator's campuses, because the news story only reported the risk or potential that the operator committed the alleged fraudulent activity (which led to the stock price drop), but not that the operator necessarily did so. The court in *Meyer v. Greene*, 710 F.3d 1189, 1200–01 (11th Cir. 2013) held that the announcement of a government investigation into allegedly fraudulent misconduct was not a corrective disclosure sufficient to establish loss causation because the announcement of an investigation "reveals just that—an investigation—and nothing more." And the court in *In re TransDigm Grp.*, 440 F. Supp. 3d at 772, determined that a Congressperson's request for investigation into the defendant company, which investigation raised concerns about a pervasive price-gouging fraud, was "not sufficient to constitute a corrective disclosure in the absence of an actual revelation of fraud or admission of wrongdoing." *See also In re Almost Fam., Inc. Sec. Litig.*, No. 3:10-CV-00520-H, 2012 WL 443461, at *13 (W.D. Ky. Feb. 10, 2012) (finding a failure to plead loss causation based on news article and press releases that "revealed nothing more than a risk, *a possibility*, that Defendants may have made misrepresentations," absent specific allegations of fraud or disclosures of actual misconduct).

Here, Plaintiffs allege AEP's stock dropped on publication of the *Columbus Dispatch* article. That article, however, did not purport to correct any of what Plaintiffs claim are the actionable misstatements or omissions. Rather, the article discussed Householder's scheme and reported that EOE used a portion of funds received from AEP to make contributions of $150,000 to Generation Now and $200,000 to Coalition. (Compl. ¶ 74.) Plaintiffs clearly allege that AEP's stock price dropped because of the news regarding Householder's scheme and the speculation that AEP might have been involved in the scheme because EOE subsequently contributed to Generation Now and Coalition. (*Id.* ¶¶ 74–75.) But Plaintiffs allege no facts (based on the article or anywhere else) demonstrating that AEP was actually involved in or knew of the bribery scheme. Nor did the article purport to correct any of the other supposed false statements or omissions that Plaintiffs allege. As a result, AEP's stock price could not have dropped based on any supposed revelation of the truth gleaned from the article about the purported misstatements and omissions alleged in the Complaint. *Omnicare I*, 583 F.3d at 944; *D.E. & J*, 133 Fed. App'x at 1000–01.

At most, the article revealed the *potential* that AEP's contributions were used in the criminal scheme or that AEP otherwise may have been involved in that scheme, but that is not an actionable allegation of causation. *Metzler*, 540 F.3d at 1064; *Meyer*, 710 F.3d at 1200–01. For example, the article said nothing about the following allegation: "Tierney concealed that the primary driver for AEP's lack of support for HB6 (as introduced in the House on April 12, 2019) was the lack of any cost-recovery provision governing AEP's own coal-fired plants. AEP thus was not concerned about 'a bailout for one company,' as Tierney expressed, provided that it too was included in that bailout." (Compl. ¶ 56, quoting, in part, Q1 2019 earnings call (Decl., Ex. 26).) The article also did not address Plaintiffs' allegation that AEP's statement that "[m]anagement is analyzing the impact of this legislation and at this time cannot estimate the impact on results of

34

operations, cash flows or financial condition," (*id.* ¶ 60, quoting 2019 Q2 10-Q (Decl., Ex. 27 at 2) (emphasis removed)) was false because "AEP, in fact, was able to estimate the impact of the legislation on its financial results, at least with respect to coal-fired cost recovery." (*Id.* ¶ 61.) Clearly, the article did not reveal AEP's support for HB6 (which was anyway a matter of public record), and therefore it corrected nothing about these alleged misstatements and omissions. The article also fails to correct anything about any other alleged misstatement or omission.

Plaintiffs' reference to the *Columbus Dispatch* article, and the failure of that article to touch upon the alleged non-disclosures, coupled with the absence of any specific factual allegation as to Defendants' knowledge of the misuse of AEP or EOE contributions, is dispositive. There is no loss causation.

## IV. Count I Against The Individual Defendants Should Be Dismissed For Failure To State A Claim For All Of The Reasons Discussed Herein.

The above arguments (Sections I–III) apply with equal force to AEP, Mr. Akins, and Mr. Tierney, and require the dismissal of Count I as to each of them. For all of the reasons discussed herein, the fatal defects in Count I—namely, Plaintiffs' failure to adequately plead scienter, any actionable misstatement or omissions, or loss causation—each require dismissal of Count I as alleged against each of Mr. Akins and Mr. Tierney, just as they require dismissal with regards to AEP.

Plaintiffs fail to plead that either Mr. Akins or Mr. Tierney was aware of Householder's bribery scheme or any other particularized facts supporting the conclusion that Mr. Akins or Mr. Tierney knew that any respective statement was false or misleading at the time it was made. (*See* Section I.) Nor have Plaintiffs pled facts suggesting Mr. Akins or Mr. Tierney had any knowledge that EOE contributions were being misused in any way. (*Id.*) As explained in Section I.B, Mr.

Akins's and Mr. Tierney's stock sales do not support an inference of scienter, and certainly do not constitute the cogent and compelling inference of scienter required to sustain Plaintiffs' claims.

Plaintiffs also fail to identify any actionable misstatement or omission by Mr. Akins or Mr. Tierney. The five alleged misstatements that Plaintiffs attribute to Mr. Akins and/or Mr. Tierney (Compl. ¶¶ 54–55, 60, 62, 69, 70) are not actionable for the reasons described in Section II. (*See also* Ex. A, Nos. 1, 3–4, 7–8.) Mr. Akins and Mr. Tierney cannot be liable for the remaining three alleged misstatements (*id.* ¶¶ 58, 65–66, 72), because Plaintiffs do not plead that either Mr. Akins or Mr. Tierney was the "maker" of those statements. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 147 (2011) (holding defendant was not liable for alleged misstatements because there was not "anything on the face of the prospectuses [to] indicate that any statements therein came from [defendant]").

## V. The Court Should Dismiss Plaintiffs' Count II Because Plaintiffs Have Failed To Plead A Primary Securities Law Violation (Count I) As Required To Sustain Their Claim Of Control Person Liability (Count II).

"Where plaintiffs do not state a claim for a primary securities law violation under Rule 10b–5, dismissal of a 'control person' liability claim under 15 U.S.C. § 78t(a) is also proper." *Dailey v. Medlock*, 551 F. App'x 841, 849 (6th Cir. 2014); *see PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 696 (6th Cir. 2004), *abrogated on other grounds by Tellabs*, 551 U.S. at 324 (dismissing Section 20(a) claim for failure to plead a primary violation of the securities laws); *Walker*, 2020 WL 6118467, at *17 ("Because it is clear that Plaintiff must plead a primary violation of the Exchange Act in order to adequately claim control personal liability, Count Two is necessarily deficient and must also be dismissed.") Here, the control person claim (Count II) must be dismissed because Plaintiffs fails to plead a primary violation of the securities laws.

## VI.    The Court Should Dismiss The Complaint With Prejudice.

The PSLRA compels dismissal of the Complaint with prejudice. Although leave to amend a complaint is generally liberally granted, "in cases involving the PSLRA, leave to amend is not as readily granted." *Beaver Cnty. Ret. Bd. v. LCA-Vision Inc.*, No. 1:07-CV-750, 2009 WL 806714, at *26 (S.D. Ohio Mar. 25, 2009) (citing *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 692 (6th Cir. 2003)). The Sixth Circuit has recognized that "the purpose of the PSLRA would be frustrated if district courts were required to allow repeated amendments to complaints filed under the PSLRA." *Miller,* 346 F.3d at 692.

Here, Plaintiffs had over six months from the filing of the original complaint to investigate and attempt to substantiate their claims. Their failure to plead cognizable claims, despite having significant time in which to investigate their allegations, warrants dismissal with prejudice. *See Walker*, 2020 WL 6118467, at *18 (dismissing with prejudice because "the mandatory language in the PSLRA requires courts to restrict the ability of plaintiffs to amend their complaint," and plaintiffs already had one opportunity to amend) (citing *Miller*, 346 F.3d at 692) (quotation marks omitted); *Fidel v. Farley*, 392 F.3d 220, 236 (6th Cir. 2004), *abrogated on other grounds by Tellabs*, 551 U.S. at 324 (affirming dismissal with prejudice because plaintiffs had two opportunities to plead scienter and provided no indication that amended complaint would satisfy PSLRA's pleading requirements); *Beaver Cnty.,* 2009 WL 806714, at *26–27 (denying leave to amend after plaintiffs filed their consolidated complaint and had "a five-month opportunity to investigate their allegations and replead their claims").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint with prejudice.

Dated: May 10, 2021          By: */s/ James A. King*

James A. King (0040270)
*Trial Attorney*
PORTER, WRIGHT, MORRIS & ARTHUR LLP
41 S. High Street
Columbus, OH 43215
Telephone: (614) 227-2000
jking@porterwright.com

J. Kevin McCall (*admitted pro hac vice*)
Nicole A. Allen (*admitted pro hav vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
Telephone: (312) 222-9350
jmccall@jenner.com
nallen@jenner.com

*Attorneys for Defendants American Electric Power Company, Inc., Nicholas K. Akins, Brian X. Tierney, and Joseph M. Buonaiuto*